

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4819*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0717* |
| *Ayn B.Ducao*<br>*Assistant United States Attorney* | | *TTY/TDD: 410-962-4462*<br>*Ayn.Ducao@usdoj.gov* |

August 30, 2012

M. Scotland Morris, Esquire
Simms Showers LLP
20 S. Charles Street, Suite 702
Baltimore, MD 21201

Re:   <u>United States v. Diego Amparo</u>
Crim. No. ~~WDQ~~-03-0212

Dear Mr. Morris:

     This letter, together with the Sealed Supplement confirms the plea agreement which has been offered to your client, Diego Amparo (Defendant) by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by <u>September 10, 2012,</u> it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

     1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with distribution of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

     2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

          a.    At or about the time charged in the Indictment, in the District of Maryland, the Defendant unlawfully distributed heroin;

November 2006

     b.      The Defendant did so knowingly and intentionally; and

     c.      The Defendant knew that the substance he was distributing was a controlled substance.

## Penalties

3.      The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for twenty (20) years and a $1,000,000 fine, followed by a term of supervised release of three (3) years. In addition, your client must pay $100 as a special assessment under 18 U.S.C. §3013, which will be due and should be paid at or before time of sentencing. Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2500.00 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3). If a fine is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, he supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

     a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

     b.      If the Defendant elected a jury trial, the jury would be comprised of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

     c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present

any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

    5.  "C" Plea: Advisory Sentencing Guidelines Apply

    The parties stipulate and agree pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the sentence outlined in paragraph 8 is an appropriate disposition of the case. The Defendant understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991-998.

Factual and Advisory Guidelines Stipulation

    6.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

Base Offense Level and Adjustments

    (a).  This Office and the Defendant stipulate and agree that the applicable

base offense level is a level 20, pursuant to USSG §§ 2D1.1(c)(10), and 1B1.3 to account for at least 40 grams of heroin, but less than 60 grams of heroin. Since the Defendant committed another drug trafficking offense while on release on this case, this Office and the Defendant stipulate and agree that a three-level upward adjustment pursuant to USSG § 3C1.3 applies.

(b).     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office *will not* make a motion pursuant to USSG § 3E1.1(b) for an additional one-level decrease since the Defendant became a fugitive during the pendency of this case. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.

Therefore, the adjusted base offense level after acceptance of responsibility is **21**.

7.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

<u>Rule 11(c)(1)(C) Plea</u>

8.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment of 24 months is the appropriate disposition of this case. The parties also agree that at the conclusion of any term of imprisonment, that the Defendant shall be placed on supervised release for a period of ~~four~~ three (3) years. This sentence is to  run *consecutively* to any sentence imposed in the case of *United States v. Diego Amparo*, Criminal Case No. CCB-11-0569. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. Furthermore, in the event that the Court rejects this agreement, and the Defendant withdraws his plea, the Government is free to file a notice pursuant to 21 U.S.C. §851, which will enhance his sentence upon conviction.

4

### Waiver of Appeal

*MSM*

9.   (a)   The parties further understand and agree that in the event the Court does not approve a conditional plea by the Defendant, pursuant to F.R.C.P. 11(a)(2), the Defendant may withdraw his plea pursuant to F.R.C.P. 11(c)(5).   *provided that the sentence imposed*

(b)   The parties agree that, subject to the exceptions set forth herein at paragraph 9(a) and 9(b), your client and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. §3742 to appeal whatever sentence is imposed ~~that~~ is **24** months, including any issues that relate to the establishment of the guideline range. Nothing in this agreement shall be construed to prevent either your client or the United States from invoking the provisions of Federal Rule of Criminal Procedure 35, and appealing from any decision thereunder, should a sentence be imposed that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory minimum mandatory provision.

(c)   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

10.   The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

11.   This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and together with the Stipulation of Facts and the Sealed Supplement,  constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be

5

entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to us promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Ayn B. Ducao
Christopher J. Romano
Assistant United States Attorneys


I have read this agreement, including the Sealed Supplement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/4/12
Date

Diego Amparo
Diego Amparo


I am Mr. Amparo's attorney. I have carefully reviewed every part of this agreement and sealed supplement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/4/12
Date

M. Scotland Morris, Esquire

6

ATTACHMENT A

STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On or about August 26, 2002, August 29, 2002, September 10, 2002 and September 17, 2002, Diego Amparo (Defendant) distributed heroin in the vicinity of the Manhattan Carry-Out, a business located near Reisterstown Road in Baltimore, Maryland.

The evidence against the Defendant consists of observations and surveillance by police officers and federal agents of ongoing drug activities of the Defendant on the dates above, testimony from cooperating witnesses regarding the Defendant's distribution activities, and recorded conversations between cooperating informants and the Defendant.

On August 26, 2002, a cooperating informant purchased approximately 9.8 grams of heroin from the Defendant at the Manhattan Carry-Out. The cooperating informant was directed by agents of the Federal Bureau of Investigation (FBI) to purchase heroin from the Defendant. FBI agents provided the cooperating informant with funds and attached a recording device to the cooperating informant. The cooperating informant then met with the Defendant on three different occasions on August 26, 2002 in order to arrange for the purchase of heroin from the Defendant, provide the FBI funds to the Defendant to pay for the heroin and then receive the heroin from the Defendant. The cooperating informant then immediately turned over the heroin to FBI agents. FBI agents also observed that the Defendant arrived at the Manhattan Carry-Out in a light blue Toyota 4Runner bearing Pennsylvania license plate EVD-3706, of which the Defendant was the registered owner.

7

On August 29, 2002, the cooperating informant met with the Defendant at the Manhattan Carry-Out and purchased 16 grams of heroin. Prior to meeting the Defendant, the cooperating informant had been provided funds and a recording device by FBI agents. Subsequent to meeting with the Defendant, the cooperating informant turned over the heroin to FBI agents.

On September 10, 2002, the cooperating informant met with the Defendant at the Manhattan Carry-Out and purchased 11.9 grams of heroin. Prior to meeting the Defendant, the cooperating informant had been provided funds and a recording device by FBI agents. Subsequent to meeting with the Defendant, the cooperating informant turned over the heroin to FBI agents.

On September 17, 2002, the cooperating informant met with the Defendant at the Manhattan Carry-Out and purchased 8.6 grams of heroin. Prior to meeting the Defendant, the cooperating informant had been provided funds and a recording device by FBI agents. Subsequent to meeting with the Defendant, the cooperating informant turned over the heroin to FBI agents.

SO STIPULATED:

Ayn B. Ducao
Christopher J. Romano
Assistant United States Attorneys

Diego Amparo

M. Scotland Morris, Esquire
Counsel for Defendant

8